UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 97-40021
Summary Calendar

KENAN DENIZCILIK TICARET VE SANAYI A.S. ISTANBUL, as owners of the
M/V NAZLI POYRAZ,

                                         Plaintiff-Appellant,

          versus

1207 COILS MORE OR LESS OF HOT ROLLED STEEL,

                                         Defendant,

TUBERIA NACIONAL, S.A. DE C.V.,

                                         Claimant-Appellee.

*******************************************************************

TUBERIA NACIONAL, S.A. DE C.V.,

                                         Plaintiff-Appellee,

          versus

THE CARGO VESSEL NAZLI POYRAZ, her engines, tackle, apparel, etc.,
in rem,

                                         Defendant,

KENAN DENIZCILIK TICARET VE SANAYI A.S. ISTANBUL,

                                         Claimant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
Brownsville Division
(No. 94-CV-216)

September 5, 1997

Before REYNALDO G. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

The owner of the M/V NAZLI POYRAZ, Kenan Denizcilik Ticaret Ve Sanayi A.S. Istanbul ("Kenan"), appeals a magistrate judge's order requiring that Tuberia Nacional, S.A. de C.V. ("Tuberia"), be paid the sum of $52,694.70, plus interest, for damage caused to certain steel coils the vessel was transporting to the Port of Brownsville. The only issue in this appeal is whether Tuberia bore the risk of loss to the coils and therefore has standing to sue Kenan. After reviewing the opinion of the magistrate judge, the arguments of both parties, and the relevant law, we conclude that the risk of loss rested with the buyer and accordingly affirm the judgment of the magistrate judge.

I.

On March 25, 1994, Tuberia, a Mexican corporation doing business in Monterrey, placed an order for a quantity of steel coils with Ferrostaal Metals Corporation ("Ferrostaal"), with a purchase price just over $ 3 million. Payment would be accomplished by means of an irrevocable letter of credit in favor of Ferrostaal, payable on sight drafts by the Banco Nacional de Mexico ("Banamex"). The steel was loaded onto the M/V NAZLI POYRAZ in St. Petersburg, Russia and Ferrostaal was issued a clean bill of

[*] PURSUANT TO 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

lading. On June 28, 1994, Ferrostaal presented the bill of lading and other documents to Banamex which, on July 5, paid Ferrostaal for the steel. The letter of credit defined the shipping terms as: "C AND F LANDED, BROWNSVILLE, TEXAS."

In the meantime, the M/V NAZLI POYRAZ had left St. Petersburg bound for Houston, for an interim stop, and then to Brownsville. Between Houston and Brownsville, fuel oil leaked in the vessel and caused damage to some of the coils. The vessel reached Brownsville on July 8. After being unloaded, the coils were sent to Tuberia's plant in Monterrey where they were cleaned. Tuberia brought this suit to recover the costs it incurred in repairing the goods. The case went to trial before a magistrate judge, the Honorable John Wm. Black, and a judgment was rendered in favor of Tuberia. 945 F. Supp. 1040 (S.D. Tex. 1996). The magistrate judge held, *inter alia*, that the risk of loss to the cargo passed from Ferrostaal to Tuberia before its arrival in Brownsville, thereby providing Tuberia with standing to recover from the vessel the resulting damages. This, as mentioned above, is the only issue Kenan raises on appeal.

## II.

The parties agree that the governing law is the Texas version of the Uniform Commercial Code, codified at Tex. Bus. & Com. Code Ann. §§ 1.01 *et seq.* The magistrate judge determined that § 2.320

3

governed resolution of this issue.  This section provides meaning to the terms "C.I.F." and "C & F" as they are used in transactions for the sale of goods.  Under the Code, a C & F contract means that the cost of the goods includes cost and freight to the named destination; it differs from a C.I.F. contract only in that the latter includes the cost of insurance.  Tex. Bus. & Com. Code Ann. § 2.320(a).  The risk-of-loss effect of a C.I.F. contract under Texas law was discussed in *Steuber Co. v. Hercules, Inc.*, 646 F.2d 1093 (5th Cir. Unit A 1981).  We held that the Texas UCC shifts the risk of loss from the seller to the buyer at the point where the seller presents conforming documents and is paid.  This holding is in accord with the official comments to this section, which provide that the buyer bears the risk of loss after the seller has performed all of his obligations under a C.I.F. contract.  Tex. Bus. & Com. Code § 2.320 cmt. 1.  The comments also state that the same rule obtains for C & F contracts.  Tex. Bus. & Com. Code § 2.320 cmt. 16.  Kenan is unable to point us to any subsequent cases of our court or of the Texas courts which suggest that the holding in *Steuber Co.* is no longer good law.[*]  We agree with the magistrate judge that, as a C & F contract, the risk of loss passed

---

[*]  Kenan's citation of *Rheinberg Kellerei v. Brooksfield Nat'l Bank of Commerce*, 901 F.2d 481 (5th Cir. 1990), is off the mark. Among other things, we stated in that case only that by the time the goods arrived at Houston risk of loss had shifted. We made no determination as to *when* the risk shifted since that was unnecessary to the resolution of any issue in that case.

4

to Tuberia upon Ferrostaal's presentation of conforming documents.

Kenan argues, however, that this is not the end of the inquiry. It states that the parties to a C & F contract are free to arrange alternate risk-of-loss provisions and that they have done so in this case. We agree with the first proposition, that the parties were free to negotiate different burdens, but we cannot concur in the second. Kenan is unable to point to anything suggesting that the parties arranged any other terms. In fact, the magistrate judge found that the parties' actions made it clear that this indeed was their understanding of the agreement. Moreover, Kenan's suggestion that another Code section, whether it be § 2.509 or § 2.510, controls is without basis; neither section negates the effect of § 2.320.

In light of the foregoing, the judgment is affirmed.

AFFIRMED.

5